## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ROBIN LEIVA LEMUS | ) | CASE NO. 4:26-cv-203 |
| | ) | |
| | ) | |
| Petitioner, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| ROBERT LYNCH, *et al.*, | ) | |
| | ) | |
| | ) | |
| Respondents. | ) | |

Petitioner Robin Leiva Lemus, an immigrant detained at the Northeast Ohio Correctional Center in Youngstown, Ohio, petitions for a writ of habeas corpus under 28 U.S.C. § 2241. (Doc. No. 1 (Petition) ¶ 2.) The Court directed respondents Robert Lynch, Director of the Detroit Field Office, U.S. Immigration and Customs Enforcement ("ICE"); Kristi Noem, Secretary of the U.S. Department of Homeland Security ("DHS"); and Pamela Bondi, U.S. Attorney General (collectively, the "government") to show cause why the writ should not be granted. (Doc. No. 3 (Order); Doc. No. 5 (Order Expediting Briefing).) The government responded and moved to dismiss. (Doc. No. 6 (Response and Motion to Dismiss).) Both the petition and the motion are now fully briefed.

As it has done in courts across the country for months, the government argues that unadmitted immigrants like Lemus, who were detained after having lived in the United States for years, are "seeking admission" into the United States such that they are subject to mandatory detention under 8 U.S.C. § 1225(b)(2) pending removal proceedings. As it ruled in a prior opinion, this Court disagrees with the government's interpretation of the statute. *See generally Chavez v.*

*Dir. of Detroit Field Off.*, No. 4:25-cv-2061, 2025 WL 3187080 (N.D. Ohio Nov. 14, 2025). Unadmitted immigrants like Lemus are governed by 8 U.S.C. § 1226(a)'s discretionary bond provision; none of the new jurisdictional or prudential hurdles the government now asserts change this conclusion. For the reasons more thoroughly set forth below, the petition (Doc. No. 1) is GRANTED, and the motion (Doc. No. 6) is DENIED.

## I.    BACKGROUND

On July 8, 2025, ICE, in coordination with the United States Department of Justice, announced a new government policy. *See Duran-Rojas v. Raycraft*, No. 25-cv-14051, 2026 WL 243205, at *1 (E.D. Mich. Jan. 29, 2026). Under this new policy, "noncitizens who have resided in the United States for over two years and who are apprehended in the interior of the country are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)." *Chitu v. Harper*, No. 2:25-cv-3180, 2026 WL 279634, at *1 (W.D. Tenn. Feb. 3, 2026) (citation omitted). For decades prior to the announcement of this policy, "DHS afforded those same persons bond hearings under 8 U.S.C. § 1226(a)." *Id.* (citations omitted). The Board of Immigration Appeals ("BIA") then affirmed this new policy in the *Matter of Yajure Hurtado*. 29 I. & N. Dec. 216 (BIA 2025); (*see* Doc. No. 1 ¶ 3.)

Lemus is one of the many immigrants across the country who have been denied bond hearings under this new policy. Lemus is an 18-year-old citizen of Honduras. (Doc. No. 1 ¶ 30.) He entered the United States on February 22, 2018, at the age of 10, with his mother. (*Id.*) He was allegedly not admitted or paroled into the United States at the time he entered this country. (Doc. No. 1-4 (Form 1-261, Notice to Appear).) The government subsequently placed Lemus in removal proceedings, charging him as inadmissible under § 212(a)(7)(A)(i) of the Immigration and Nationality Act ("INA"). (*See id.*) On October 24, 2024, Lemus was ordered removed in absentia

because he failed to appear for a removal hearing. (Doc. No. 6-1 (Order of Immigration Judge).) On November 22, 2024, the Immigration Judge granted Lemus's motion to reopen those proceedings. (Doc. No. 6-2 (Order of Immigration Judge).)

Lemus's current detention commenced on either September 25, 2025, or October 7, 2025, when ICE agents detained Lemus at a traffic stop. (Doc. No. 1 ¶¶ 2, 33; Doc. No. 6, at 9 (citing Doc. No. 6-3 (Form I-830E)).)[1] On October 21, 2025, Lemus filed a motion for a custody redetermination hearing. (Doc. No. 6-5 (Motion for Bond Hearing).) On October 30, 2025, the motion was withdrawn. (Doc. No. 6-6 (Order of Immigration Judge).) On January 8, 2026, Lemus filed a second motion for a custody redetermination hearing. (Doc. No. 6-7 (Second Motion for Bond Hearing); *see* Doc. No. 1 ¶ 34.) On January 26, 2026, the Immigration Court denied Lemus's second motion for a bond hearing. (Doc. No. 1-5 (Order of Immigration Judge); Doc. No. 6, at 9–10.) That same day, Lemus filed an appeal of that denial with the BIA. (Doc. No. 1 ¶ 4; Doc. No. 6, at 10.) As of the date of this memorandum opinion, Lemus's BIA appeal remains pending.

Lemus filed the present petition on January 26, 2026, arguing that his detention without a bond hearing violates both the INA and his Fifth Amendment right to procedural due process. (*See generally* Doc. No. 1.) He argues that his detention is governed by § 1226(a), under which he is entitled to a bond hearing. (*Id*. ¶ 57.) He seeks, among other relief, a declaration that his detention is governed by § 1226(a) and a writ ordering the government to release him "immediately, or in the alternative, directing the Immigration Court to exercise jurisdiction over bond proceedings[.]" (*Id*. at 19–20; *see* Doc. No. 8, at 1.) The government opposes such relief, arguing that Lemus is governed by § 1225(b)(2)'s mandatory detention provision. (Doc. No. 15–26.)

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

## II.     LAW AND ANALYSIS

The issue here is narrow: whether Lemus's detention is governed by 8 U.S.C. § 1225(b)(2)'s mandatory detention provision or 8 U.S.C. § 1226(a)'s discretionary bond provision. Neither party suggests that any of the INA's other mandatory detention provisions, *see* 8 U.S.C. § 1226(c) (providing for mandatory detention of immigrants accused or convicted of certain crimes); 8 U.S.C. § 1225(b)(1) (providing for mandatory detention of certain asylum seekers who have been present in the United States for fewer than two years), apply here. Indeed, there is no indication that Lemus was accused or convicted of any crime, and Lemus has been present in the United States for eight years. (Doc. No. 1 ¶ 30.) Accordingly, the Court only addresses §§ 1225(b)(2) and 1226(a).

### A.     Jurisdiction

Before reaching the merits of Lemus's petition, however, the Court must first address jurisdiction. The government argues that two subsections of the INA, 8 U.S.C. § 1252(b)(9) and § 1252(g), divest this Court of jurisdiction over Lemus's petition. (Doc. No. 6, at 10–14.) The Court disagrees. This Court has jurisdiction to determine whether a detained immigrant is statutorily entitled to a bond hearing under the INA.

#### 1.     *Section 1252(b)(9)*

The government first argues that 8 U.S.C. § 1252(b)(9) strips this Court of jurisdiction over Lemus's petition. (*Id.*) Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9). The government urges that issues regarding an immigrant's detention and their entitlement to a bond hearing "aris[e] from" removal proceedings and thus fall within §

4

1252(b)(9)'s jurisdictional bar. (Doc. No. 6, at 13.) The government reads the statute too expansively.

A plurality of the Supreme Court rejected a similarly expansive view in *Jennings v. Rodriguez*. *See* 583 U.S. 281, 293, 138 S. Ct. 830, 200 L. Ed. 2d 122 (2018) (plurality). The plurality recognized that, while issues of detention and entitlement to bond hearings arguably "arise from" removal proceedings, such an expansive view of § 1252(b)(9) would have "staggering results." *Id.*

> Suppose, for example, that a detained alien wishes to assert a claim under *Bivens* [], based on allegedly inhumane conditions of confinement. [] Or suppose that a detained alien brings a state-law claim for assault against a guard or fellow detainee. Or suppose that an alien is injured when a truck hits the bus transporting aliens to a detention facility, and the alien sues the driver or owner of the truck. The "questions of law and fact" in all those cases could be said to "aris[e] from" actions taken to remove the aliens in the sense that the aliens' injuries would never have occurred if they had not been placed in detention. But cramming judicial review of those questions into the review of final removal orders would be absurd.

*Id.* (internal citations omitted). Rejecting an expansive reading, the plurality instead held that § 1252(b)(9) presented no jurisdictional bar where a claimant did not challenge a removal order, the decision to detain or seek removal in the first place, or the process by which removability would be determined. *Id.* at 294–95. A majority of the Supreme Court later adopted *Jennings*'s formulation of § 1252(b)(9): "As we have said before, § 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19, 140 S. Ct. 1891, 207 L. Ed. 2d 353 (2020) (citing *Jennings*, 583 U.S. at 294–95 (cleaned up)).

Under this formulation, § 1252(b)(9) presents no bar here. Lemus does not challenge a removal order, the initial decision of the government to detain him or seek removal, or the process by which his removability will be determined. Lemus only challenges the government's failure to

provide a bond hearing. Such a challenge does not fall within § 1252(b)(9). Indeed, a majority of the Supreme Court in *Jennings* (the plurality and dissent) agreed that a similar challenge was not barred by § 1252(b)(9). *See Jennings*, 583 U.S. at 292 (plurality) ("[Section 1252(b)(9)] does not deprive us of jurisdiction. We are required . . . to decide 'questions of law,' specifically, *whether . . . certain statutory provisions require detention without a bond hearing*." (emphasis added)); *id.* at 355 (dissent) ("Jurisdiction also is unaffected by 8 U.S.C. § 1252(b)(9), which by its terms applies only '[w]ith respect to review of an order of removal under [§ 1252(a)(1)].'[] The respondents *challenge their detention without bail*, not an order of removal." (internal citation omitted) (alterations in original) (emphasis added)); *see also Nielsen v. Preap*, 586 U.S. 392, 402, 139 S. Ct. 954, 203 L. Ed. 2d 333 (2019) (plurality) ("[Section] 1252(b)(9) does not present a jurisdictional bar" to claims that detainees were statutorily entitled to bond hearing (quoting *Jennings*, 583 U.S. at 294–95)). Most district courts in the Sixth Circuit agree. *See e.g., Reyes-Martinez v. Woosley*, No. 4:25-cv-150, 2025 WL 3680330, at *3 (W.D. Ky. Dec. 18, 2025); *Delgado v. Noem*, No. 1:25-cv-1249, 2025 WL 3251144, at *4 (W.D. Mich. Nov. 21, 2025). Lemus's petition is not barred by § 1252(b)(9).

The government's arguments to the contrary are unpersuasive. The government heavily relies on out-of-circuit case law, much of which predates the Supreme Court's clarification of § 1252(b)(9) in *Jennings* and *Regents of the University of California*. (Doc. No. 6, at 11–13.) In any event, these cases do nothing more than discuss the general nature of § 1252 without any specific discussion of whether challenges to the failure to provide a bond hearing fall within § 1252(b)(9). The Court finds little persuasive material in these citations.

What little post-*Jennings* case law the government cites is inapposite or unpersuasive. The Third Circuit's decision in *Khalil v. President, United States*, 164 F.4th 259 (3d Cir. 2026), is

distinguishable. There, the plaintiff challenged "both his removal and his detention pending removal proceedings[,]" *id.* at 273, and the Third Circuit held that the "INA bar[red] him from attacking his detention[.]" *Id.* at 281. Here, Lemus does not challenge his detention—only the government's failure to provide a bond hearing. Based on the above-referenced Supreme Court case law, this distinction is material. Indeed, the Third Circuit itself suggests as much. *See id.* at 278 (distinguishing case law on grounds that "the petitioners [in the cited case law] were not challenging the decision to detain them but only the bond procedures used[.]" (citation and quotation marks omitted)). *Khalil* thus does not help the government and indeed appears to support this Court's analysis.

The government next cites two recent Northern District of Ohio cases from the same jurist. *See Amaya-Velis v. Raycraft*, No. 4:26-cv-73, 2026 WL 100596 (N.D. Ohio Jan. 14, 2026); *Munoz Nataren v. Raycraft*, No. 4:26-cv-212, 2026 WL 214368 (N.D. Ohio Jan. 28, 2026). In both cases, the court indicates that it lacks jurisdiction under § 1252(b)(9) to hear a challenge to the denial of a bond hearing.[2] The court in *Amaya-Velis* and *Munoz Nataren* appears to reason that because § 1252(b)(9) "encompasses challenges to the decision to seek removal and the decision to detain an alien in the first place[,]" *Amaya-Velis*, 2026 WL 100596, at *2; *Munoz Nataren,* 2026 WL 214368, at *2, it must also encompass challenges to the lack of a bond hearing.

Respectfully, this Court must disagree with *Amaya-Velis* and *Munoz Nataren*. Both conflate a challenge to detention itself with a challenge to the lack of a bond hearing. As discussed

---

[2] The court in *Amaya-Velis* and *Munoz Nataren* also relies on § 1252(a)(2)(B)(ii), which divests courts of jurisdiction to review discretionary determinations by the attorney general and secretary of homeland security. As the government does not rely on this subsection in its briefing, the Court will not address it in full at this time. Suffice it to say that, while the decision to release a detainee on bond may be discretionary in some instances, the extent of the attorney general's authority to hold people without a bond hearing is not discretionary and does not fall within § 1252(a)(2)(B)(ii). *Cf. Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) (holding § 1252(a)(2)(B)(ii) inapplicable where "[t]he aliens here, however, do not seek review of the Attorney General's exercise of discretion; rather, they challenge the extent of the Attorney General's authority under the post-removal-period detention statute. And the extent of that authority is not a matter of discretion.").

above, the relevant Supreme Court case law indicates that the two concepts cannot be conflated and, indeed, are treated differently under § 1252(b)(9). A challenge to detention itself is likely barred by § 1252(b)(9). *Cf. Jennings*, 583 U.S. at 294 (plurality) (concluding that §1252(b)(9) posed no jurisdictional bar where claimants did "not challeng[e] the decision to detain them in the first place"). But a challenge to the lack of a bond hearing is likely not barred. *See id.* at 292 (plurality); *id.* at 355 (dissent); *Preap*, 586 U.S. at 402 (plurality). *Amaya-Velis* and *Munoz Nataren* fail to reckon with this distinction and thus reach an incorrect conclusion. Section 1252(b)(9) presents no barrier to Lemus's petition.

### 2.    *Section 1252(g)*

The government next argues that § 1252(g) bars jurisdiction over Lemus's petition. (Doc. No. 6, at 10.) Section 1252(g) provides, in relevant part, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). As it did under § 1252(b)(9), the government again argues that issues regarding an immigrant's detention and their entitlement to a bond hearing "aris[e] from" the decision to commence removal proceedings and thus fall within § 1252(g)'s jurisdictional bar. (Doc. No. 6, at 10.) Again, the government reads the statute too expansively.

The Supreme Court rejected as "implausible" that Congress intended § 1252(g) to cover "all claims arising from deportation proceedings." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 119 S. Ct. 936, 142 L. Ed. 2d 940 (1999) (hereinafter, "*AADC*"). Rather, the Supreme Court "narrow[ly] read[]" § 1252(g), *id.* at 487, to only cover the "three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Id.* at 482 (emphasis in original). The Supreme Court adopted

8

this narrow reading in light of § 1252(g)'s specific purpose: to protect the executive branch's discretion to decline pursuit of certain individuals without prejudice to its ability to pursue others.[3] *See id.* at 483–84.

Here, Lemus does not challenge the attorney general's decision to commence removal proceedings, to adjudicate his case, to execute a removal order, or any exercise of discretion within those three discrete tasks. Instead, Lemus challenges the attorney general's failure to provide him a bond hearing to which he claims statutory entitlement. While an immigrant's detention is technically related to the attorney general's decision to commence proceedings, that technical relation is insufficient to trigger § 1252(g). *See Jennings*, 583 U.S. at 294 (plurality) ("[In *AADC*,] [w]e did not interpret [§ 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions[.]" (citing *AADC*, 525 U.S. at 482–83)); *Alonso v. Tindall*, No. 3:25-cv-652, 2025 WL 3083920, at *2 (W.D. Ky. Nov. 4, 2025) ("A claim of unlawful detention [without a bond hearing] does not arise from the commencement of removal proceedings 'within the meaning of § 1252(g) simply because the claim relates to that discretionary, prosecutorial decision.'" (quoting *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025)) (cleaned up) (further citations omitted)). Most courts in the Sixth Circuit to have addressed the issue agree that challenges to the government's failure to provide a detained immigrant with a bond hearing do not fall within the narrow scope of § 1252(g). *See e.g., Puerto-Hernandez v. Lynch*, No. 1:25-cv-1097,

---

[3] In *AADC*, the Supreme Court recounted that, at the time § 1252(g) was enacted, the executive branch had a practice of exercising its discretion to decline pursuit of certain individuals "for humanitarian reasons or simply for its own convenience." *AADC*, 525 U.S. at 483–84. The exercise of that discretion, however, "opened the door to litigation in instances where the [executive] chose *not* to exercise [such discretion]." *Id.* at 484 (emphasis in original). Based on the executive's prior exercise of its discretion, litigants challenged immigration actions on grounds of, *inter alia*, selective prosecution, political considerations, and discrimination. *Id.* at 485 (citation omitted). In light of this history, the Supreme Court reasoned that § 1252(g) "seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations[.]" *Id.*

2025 WL 3012033, at *4 (W.D. Mich. Oct. 28, 2025); *Alonso*, 2025 WL 3083920, at *3. Section 1252(g) does not bar review of Lemus's petition.

The out-of-circuit case law on which the government relies is all distinguishable. *Alvarez v. ICE* and the three Central District of California cases the government cites are distinguishable because the claimants there, rather than challenging a failure to provide a bond hearing, challenged *detention itself*. *See Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016); *Valencia-Mejia v. United States*, No. 08-cv-2943, 2008 WL 4286979, at *1 (C.D. Cal. Sept. 15, 2008); *Wang v. United States*, No. 10-cv-389, 2010 WL 11463156, at *1 (C.D. Cal. Aug. 18, 2010); *Herrera-Correra v. United States*, No. 08-cv-2941, 2008 WL 11336833, at *1 (C.D. Cal. Sept. 11, 2008). *Tazu v. Att'y Gen. United States* is even more distinguishable; the petitioner there directly challenged execution of a pending removal order. *See* 975 F.3d 292, 294 (3d Cir. 2020) ("[Petitioner] filed a habeas petition, asking the [d]istrict [c]ourt to stop the Attorney General from executing his valid removal order[.]"). The government points to no binding or persuasive authority supporting the proposition that § 1252(g) bars Lemus's petition. As with § 1252(b)(9), § 1252(g) presents no bar here.

### B.    Prudential Exhaustion

Having determined that it may properly exercise jurisdiction over this matter, the Court turns to the question of exhaustion. Lemus concedes that he did not exhaust his administrative remedies prior to filing the present habeas petition. (*See* Doc. No. 1 ¶ 29.) While acknowledging that a court would typically require a petitioner to exhaust all administrative remedies before seeking habeas relief, Lemus suggests that his interest in a prompt resolution of the underlying action weighs heavily against requiring exhaustion. (*Id*. ¶¶ 24–29.) In particular, Lemus notes that BIA appeals take, on average, six months. (*Id*. ¶ 25.) Being required to wait six months before

returning to this Court "upon the Board's predetermined denial," he insists, "equates to hardship." (*Id.* ¶ 25.)

The government urges the Court to dismiss the petition and require Lemus to pursue his administrative remedies. (Doc. No. 6, at 14–15.) Citing generally to the dual goals of prudential exhaustion, the government argues simply that Lemus has not exhausted and that "other judges"[4] in this district have required exhaustion in similar circumstances. (*Id.* (collecting cases).) Significantly, the government does not address Lemus's futility or hardship arguments.

Where mandated by Congress, courts must require petitioners to exhaust their administrative remedies. *See McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992) (citations omitted). Lemus asserts that there is no statutory exhaustion requirement at play here, and the government does not suggest otherwise. In the absence of a statutory mandate, the decision whether to require exhaustion rests within the Court's "sound judicial discretion." *See Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (quoting *McCarthy*, 503 U.S. at 144 (further citation omitted)); *see also Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019) (observing that this type of discretion is often referred to as "prudential" exhaustion (citation omitted)). When exercising this discretion, "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy*, 503 U.S. at 146. As the

---

[4] The government offers a lengthy string cite of Northern District of Ohio cases requiring exhaustion. (Doc. No. 6, at 14–15.) A close inspection reveals that all of the decisions in the string were issued by one of two jurists. Conspicuously absent from the string are any of the majority of decisions, including decisions authored by jurists in the Northern District of Ohio, that have waived exhaustion. *See, e.g., Echavarria Morales v. Noem*, No. 3:25-cv-2691, 2026 WL 100583, at *3 (N.D. Ohio Jan. 14, 2026) (waiving prudential exhaustion) (Pearson, J.); *Lopez Lopez v. Noem*, 3:26-cv-128, 2026 WL 395202, at *6 (N.D. Ohio Feb. 12, 2026) (same) (Gaughan, J.) For the reasons explained herein, the Court respectfully disagrees with the analysis and conclusion reached in the cases cited by the government. *See, e.g., Restrepo-Guerra v. Harper*, No. 2:26-cv-2004, 2026 WL 209981, at *4 n.4 (W.D. Tenn. Jan. 27, 2026) (rejecting same line of cases for similar reasons).

government correctly notes, those institutional concerns are "protecting administrative agency authority and promoting judicial efficiency." *See id.* at 145.

In *McCarthy*, "[t]he Supreme Court also identified situations in which the interest of the individual weighs heavily against the institutional interests." *Chitu*, 2026 WL 279634, at *4 (citing *McCarthy*, 503 U.S. at 146–49). "Relevant here, 'an administrative remedy may be inadequate where the administrative body . . . has otherwise predetermined the issue before it." *Id.* (quoting *McCarthy*, 503 U.S. at 148 (further citation omitted)); *Houghton v. Shafer*, 392 U.S. 639, 640, 88 S. Ct. 2199, 20 L. Ed. 2d 1319 (1968) (in view of the attorney general's submission that the challenged rules of the prison were "validly and correctly applied to petitioner," requiring administrative review through a process culminating with the attorney general "would be to demand a futile act"); *see also Herr v. U.S. Forest Serv.*, 803 F.3d 809, 822–23 (6th Cir. 2015) ("If administrative review would come to naught, if any efforts before the agency would be pointless, the courts do not insist that litigants go through the motions of exhausting the claim anyway." (quotation marks and citation omitted)); *Shearson*, 725 F.3d at 594 (recognizing that a court may waive prudential exhaustion requirements if the "pursuit of administrative remedies would be a futile gesture" (quotation marks and citation omitted)); *see e.g., Boucher v. Lamanna*, 90 F. Supp. 2d 883, 887 (N.D. Ohio 2000) (exhaustion of administrative remedies would be futile where the Bureau of Prison's policy on categorizing the prisoner's offense as a violent crime was mandatory).

A court may also choose to waive prudential exhaustion and immediately reach the merits of a dispute when the "legal question is fit for resolution and delay means hardship."[5] *Shalala v.*

[5] The Court notes that numerous courts within the Sixth Circuit have applied the Ninth Circuit's three-factor analysis for weighing the need for prudential exhaustion before addressing futility and hardship. *See, e.g., Echavarria Morales*, 2026 WL 100583, at *2 (citing *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (finding prudential exhaustion appropriate where: (1) agency expertise makes agency consideration necessary to generate a

*Ill. Council on Long Term Care, Inc*., 529 U.S. 1, 13, 120 S. Ct. 1084, 146 L. Ed. 2d 1 (2000) (citation omitted). Especially where an administrative remedy would be subject to an indefinite or unreasonable timeline, courts have found that the hardship resulting from the delay constitutes a valid reason for waiving exhaustion requirements. *See, e.g., Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025).

Here, there is no question that the government's "administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought." *Rodriguez v. Raycraft*, 2:25-cv-13560, 2025 WL 3543614, at *3 (E.D. Mich. Dec. 10, 2025) (quoting *Cooper v. Zych*, No. 09-cv-11620, 2009 WL 2711957, at *2 (E.D. Mich. Aug. 25, 2009)). The BIA definitively announced its position in *Hurtado*, wherein the BIA endorsed the exact immigration policy Lemus is challenging in the present habeas action. *See Hurtado*, 29 I. & N. Dec. at 228.

"What is more, the BIA lacks authority to review constitutional challenges." *Gonzalez Arreaga v. Minter*, No. 2:23-cv-3167, 2026 WL 279882, at *4 (W.D. Tenn. Feb. 3, 2026) (waiving exhaustion under similar circumstances due to the existence of a due process claim (citing *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006))); *accord Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) (noting that "[e]xhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures" (citation omitted)).

---

proper record, (2) relaxation of the exhaustion requirement would encourage litigants to deliberately bypass the administrative scheme, and (3) administrative review would afford the agency an opportunity to correct its own mistake)). The Court finds that the Ninth Circuit's approach is not particularly well suited to the circumstances surrounding the present dispute, and, in any event, even if the Ninth Circuit's factors favor exhaustion, a court may still waive it for reasons of futility or hardship. *Id*. (citation omitted). Since all roads lead to futility and hardship, the Court elects to take the most direct route. Nevertheless, if the Court did apply the Ninth Circuit's three-factor test before considering futility and hardship, it would find that that the factors favor waiving exhaustion because: (1) the issues are purely legal, (2) the present habeas petition includes a due process claim which cannot be addressed by the BIA, and (3) administrative review is unlikely to change the government's position that mandatory detention under § 1225(b)(2) applies.

Accordingly, even if the BIA had not forecasted in *Hurtado* the inevitable resolution of Lemus's administrative appeal,[6] the BIA would still be unable to entertain Lemus's due process claim.

There also can be no doubt that the legal question is fit for resolution by this Court now. The question of whether Lemus's detention is governed by § 1226(a) or § 1225(b)(2) "boils down to a matter of statutory interpretation . . . [a]nd matters of statutory interpretation belong historically within the province of the courts." *Pizarro Reyes*, 2025 WL 2609425, at *3 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024) (further citation omitted)). Further, delays in reaching the merits of a legal matter properly before this Court would certainly result in a hardship to Lemus. "Bond appeals before the BIA, on average, take six months to complete." *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 779 (E.D. Mich. 2025) (citing *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025)). Indeed, any "'delays inherent' in the BIA's administrative process 'would result in the very harm that the bond hearing was designed to prevent,' that is, prolonged detention without due process." *Pizarro Reyes*, 2025 WL 2609425, at *3 (quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019)); *see also Restrepo-Guerra v. Harper*, No. 2:26-cv-2004, 2026 WL 209981, at *4 (W.D. Tenn. Jan. 27, 2026) ("Requiring [p]etitioner to wait for the BIA to address an issue it has already decided creates hardship for hardship's sake.") Moreover, any ruling by the BIA on the question of statutory interpretation would not be binding on this Court, *see Loper Bright*

---

[6] While the government did not address Lemus's futility argument herein, in similar litigation within the Sixth Circuit, the government has acknowledged that habeas petitioners in Lemus's position are "ultimately unlikely to obtain the [administrative] relief [they seek]" in light of the BIA's pronouncement in *Hurtado*. *Duran-Rojas*, 2026 WL 243205, at *5; *see Contreras-Lomeli v. Raycraft*, No. 2:25-cv-12826, 2025 WL 2976739, at *4 (E.D. Mich. Oct. 21, 2025) (government acknowledging both that *Hurtado* is "binding on immigration courts[,]" and that the petitioner is "unlikely to obtain relief because of that decision"). Given that the impetus for this wave of litigation was the BIA's approval of the government's July 2025 dramatic shift in policy regarding the detention without bond of immigrants already in this country, the government's insistence that petitioners first exhaust their administrative remedies borders on disingenuous.

14

*Enters.*, 603 U.S. at 401, which has already addressed this precise legal question in a prior matter before it. *See Chavez*, 2025 WL 3187080.

Ultimately, the Court joins the majority of district courts in the Sixth Circuit that have concluded that requiring exhaustion would not promote judicial efficiency or protect administrative authority "because it would only delay the resolution of [Lemus's] legal questions." *Chitu*, 2026 WL 279634, at *4; *see, e.g., Restrepo-Guerra*, 2026 WL 209981, at *4; *Echavarria Morales*, 2026 WL 100583, at *3; *Martinez-Elvir v. Olson*, No. 3:25-cv-589, 2025 WL 3006772, at *6 (W.D. Ky. Oct. 27, 2025); *Sanchez Alvarez v. Noem*, 1:25-cv-1090, 2025 WL 2942648, at *4 (W.D. Mich. Oct. 17, 2025). "The prevention of six months or more of unlawful detention thus outweighs the interest[] the BIA might have in resolving [Lemus's] appeal of his bond determination." *Pizarro Reyes*, 2025 WL 2609425, at *4. The Court, therefore, waives administrative exhaustion.

### C.    Merits

Having addressed jurisdiction and exhaustion, the Court may now address the merits of Lemus's petition. Lemus argues that his detention is governed by 8 U.S.C. § 1226(a), which provides for discretionary bond, and that the government violates the law by denying him a full bond hearing. The government argues that all unadmitted immigrants present in the United States are subject to 8 U.S.C. § 1225(b)(2), which mandates detention without bond.[7]

As noted above, this is not the first time the Court has faced this specific interpretive question. *See Chavez*, 2025 WL 3187080. In *Chavez*, this Court addressed the exact interpretation the government puts forth now and rejected it based on the text, structure, and history of §§

---

[7] Again, neither party suggests that any of the INA's other mandatory detention provisions, *see* 8 U.S.C. §§ 1225(b)(1), 1226(c), apply to Lemus, so the Court does not address them.

1225(b)(2) and 1226(a). The Court held that immigrants detained while already in the United States fall within § 1226(a)'s discretionary bond provision. As discussed below, the Court sees no reason to depart from this conclusion.

       *1.*    <u>*Legal Standard and Relevant Statutes*</u>

Lemus filed this petition under 28 U.S.C. § 2241. Section 2241 provides "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)).

Turning to the relevant detention statutes, 8 U.S.C. § 1225(b) governs the detention of "aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." *Jennings*, 583 U.S. at 297. As relevant here, § 1225(b)(2) provides for the mandatory detention of "applicant[s] for admission" who are "seeking admission" and "not clearly and beyond a doubt entitled to be admitted[.]" 8 U.S.C. § 1225(b)(2). While § 1225(b) provides specific rules for immigrants seeking entry into the United States, § 1226(a) provides the "default rule" for the detention of immigrants "already in the country[.]" *Jennings*, 583 U.S. at 288–89. Immigrants detained under § 1226(a) may be released on bond or conditional parole. 8 U.S.C. § 1226(a)(2).

This case calls upon the Court to interpret §§ 1225(b)(2) and 1226(a). When interpreting statutes, courts "must give effect to the clear meaning of statutes as written." *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (citation and quotation marks omitted). In so doing, the courts "assign each word of the statute its ordinary, contemporary, common meaning . . . , while keeping in mind that statutory language has meaning only in context." *Id.* (citations, quotation marks, and

alterations omitted). Finally, "[i]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 151 L. Ed. D 339 (2001) (citation and quotation marks omitted).

### 2.  *Sections 1225(b)(2) and 1226(a)*

#### a.  *The Relevant Text*

The Court begins with the relevant text. Section 1226(a) states, in relevant part, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1225(b)(2) then states, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a[.]" 8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). "Admission" in turn is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Putting these statutes together, it would appear that § 1226(a) provides a general rule, while § 1225(b)(2) provides a carveout to that rule. Section 1226(a) applies broadly to immigrants arrested and detained pending removal determinations. Meanwhile, § 1225(b)(2) carves out from § 1226(a) those immigrants who are (1) either present in the United States without having lawfully entered after inspection and authorization by an immigration officer or arriving in the United States and (2) seeking lawful entry via inspection and authorization by an immigration officer.

On this reading, § 1225(b)(2) does not apply to Lemus. While he may be present in the United States without admission (Doc. No. 1, ¶¶ 30–32; Doc. No. 1-4), and thus is an "applicant for admission," he is not seeking to lawfully enter via inspection and authorization by an immigration officer. It would strain the words of the statute to say that one who has been in the United States for eight years is seeking entry. *See e.g., Lopez-Campos*, 797 F. Supp. 3d at 781 ("[T]hose like [petitioner], who have been here for years upon years and never proceeded to obtain any form of citizenship . . . are not 'seeking' admission"); *Barrera v. Tindall*, No. 3:25-cv-541, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) ("Noncitizens who are present in the country for years, like [petitioner] who has been here 20 years, are not actively 'seeking admission.'"). Rather, as an immigrant arrested and detained while "already in the country[,]" *Jennings*, 583 U.S. at 289, Lemus falls more aptly within § 1226(a)'s default rule. *See, e.g., Lopez-Campos*, 797 F. Supp. 3d at 784 ("There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country for over twenty-six years and was already within the United States when apprehended and arrested during a traffic stop, and not upon arrival at the border.").

The government argues, however, that Lemus's very presence in the United States as an unadmitted immigrant renders him subject to § 1225(b)(2). (Doc. No. 6, at 15–17.) With convoluted reference to case law, statutes, regulations, and administrative decisions, the government appears to argue that all unadmitted immigrants in the United States must be treated as both "applicants for admission" and "seeking admission" such that they fall within § 1225(b)(2). (*Id.*) Section 1226(a), as the government argues, applies only to immigrants who were admitted into the United States and later became deportable. (*Id.* at 25–26.) The government's textual analysis is flawed.

First, contrary to the government's argument (Doc. No. 6, at 22–23), 8 U.S.C. § 1225(a)(3) does not support its reading. Section 1225(a)(3) reads, in relevant part, "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission . . . shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3). The government argues that the use of the term "otherwise" indicates that all applicants for admission are seeking admission. Not so. To borrow an analogy from the well-reasoned dissent in the recent Fifth Circuit decision in *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026),

> the subsection Congress actually wrote is more like saying, at the end of football season, "All students who are football players or otherwise seeking to play football or cheerlead should come to the gym for an info session this evening." In a grammatical void, we might be tempted to equate "football players" with "students seeking to play football," or deem the former a subset of the latter, but the players on the actual football team (the high school equivalent of a statutory term of art) would likely disagree.

*Id.* at *17 (Douglas, J. dissenting). The government's grammatical sleight-of-hand is unpersuasive.

Next, the government does not shy away from the fact that its reading would render the term "seeking admission" entirely superfluous of the term "applicant for admission," (Doc. No. 6, at 15 ("Aliens who enter the United States, and who have not been admitted, are applicants for admission and are aliens seeking admission[.]")), but this Court will not presume that Congress intended its words to be redundant or superfluous. *See TRW Inc.*, 534 U.S. at 31 (directing courts to construe statutes as to not render any word superfluous). If Congress meant for all "applicants for admission" to be understood as "seeking admission" it would not have used both terms in the same sentence. *Sumba v. Crowley*, No. 1:25-cv-13034, 2025 WL 3126512, at *4 (N.D. Ill. Nov. 9, 2025) ("[T]he [c]ourt rejects as implausible the government's contention that two distinct terms in

19

the same subparagraph—'applicant for admission' and 'an alien seeking admission'—somehow bear the *same* meaning even though they are (obviously) *different* terms." (emphasis in original)).[8]

Relatedly, the government's interpretation fails to give effect to Congress's choice to use the active term "seeking" in describing those immigrants covered by § 1225(b)(2). "Seeking" "implies action[.]" *Lopez-Campos*, 797 F. Supp. 3d at 781; *see also Sumba*, 2025 WL 3126512, at *4 ("[A] present participle stated in the progressive tense [] implies some ongoing, *affirmative* action[.]" (emphasis in original)). "Seeking" requires something more than mere passive presence in the United States. There is nothing in the record that suggests that Lemus, who has been present in the United States for eight years, was actively seeking admission when he was detained by ICE officers at a traffic stop in September 2025.

Finally, the government's argument that § 1226(a) only applies to admitted immigrants conflicts with the statute itself. Section 1226(a) provides for discretionary bond to immigrants "arrested and detained pending" a removal determination—it makes no distinction between admitted and unadmitted immigrants. 8 U.S.C. § 1226(a). Further, § 1226(c)(1)(A, D, E) carves out certain inadmissible immigrants from § 1226(a)'s discretionary bond provision. 8 U.S.C. § 1226(c)(1)(A, D, E). If § 1226(a) only applied to admitted immigrants, it would be unnecessary for Congress to carve out certain inadmissible immigrants in § 1226(c)(1)(A, D, E). Again, this Court will not presume that Congress intended that its words would be superfluous. *TRW Inc.*, 534

---

[8] On reply, the government argues that redundancies in statutes are "common" and that "a redundancy does not permit a court to 'rewrite . . . another portion of the statute contrary to text.'" (Doc. No. 9, at 2–3 (quoting *Barton v. Barr*, 590 U.S. 222, 239, 140 S. Ct. 1442, 206 L. Ed. 2d 682 (2020)).) That redundancy may, at times, be unavoidable, *see Barton*, 590 U.S. at 239 ("[S]ometimes the better overall reading of the statute contains some redundancy." (citations omitted)), does not change the "cardinal principle" that, where possible, courts should avoid rendering Congress's words "superfluous, void, or insignificant." *TRW Inc.*, 534 U.S. at 31. This is not a situation where the "better overall reading of the statute contains some redundancy." *Barton*, 590 U.S. at 239. To the contrary, as discussed above, a plain reading of the relevant statutes results in a reading that avoids any redundancy. Far from "rewrite[ing]" the statute, this reading gives effect to each word written by Congress.

U.S. at 31 (directing courts to construe statutes as to not render any word superfluous). Overall, the text of the statute supports the Court's reading.

### b. The Relevant Context and Structure

The structure of the overall statutory scheme, as described in *Jennings,* 583 U.S. 281, further supports this Court's reading. In *Jennings*, the Supreme Court described § 1226(a) as the "default rule" that applies to immigrants "present in the country," including immigrants "who were inadmissible at the time of entry[.]" *Id.* at 288. Meanwhile, the Supreme Court described § 1225(b) in more specific terms. The Supreme Court noted that § 1225(b) operates within a process that "generally begins at the Nation's borders and ports of entry[.]" *Id.* at 287. The Supreme Court further noted that "§ 1225(b) applies primarily to aliens seeking entry into the United States[.]" *Id.* at 297. The Supreme Court's analysis in *Jennings* thus supports the Court's reading that § 1225(b)(2) applies to immigrants seeking to lawfully enter the United States, while § 1226(a) provides a default rule applicable to immigrants detained in the United States, regardless of whether they were originally admitted.

The government, however, argues that the Supreme Court's analysis in *Jennings* supports its reading. (Doc. No. 6, at 17, 21.) In doing so, the government points to two isolated statements in *Jennings*: (1) "applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)[,]" (Doc. No. 6, at 17 (quoting *Jennings*, 583 U.S. at 287)) and (2) "[§ 1225(b)] applies primarily to aliens seeking entry to the United States ('applicants for admission' in the language of the statute.)" (Doc. No. 6, at 21 (quoting *Jennings*, 583 U.S. at 297).) Using these isolated statements, the government argues that the Supreme Court understood "seeking admission" and "applicant for admission" to be one and the same and resultantly, understood § 1225(b)(2) to apply to all unadmitted immigrants in the United States.

But when reading *Jennings* as a whole, it becomes clear that the Supreme Court did not construe § 1225(b) to apply so broadly. The Supreme Court understood § 1225 to operate "at the Nation's borders and ports of entry" and involve the "inspect[ion] [of immigrants] by immigration officers[.]" *Jennings*, 583 U.S. at 287. This language does not indicate broad application to all unadmitted immigrants in the United States. Rather, as other courts in the Sixth Circuit have found, this language indicates that § 1225(b)(2) applies to those *arriving in the country*. *See, e.g.*, *Contreras-Cervantes v. Raycraft*, No. 2:25-cv-13073, 2025 WL 2952796, at *7 (E.D. Mich. Oct. 17, 2025). In light of the foregoing, the structure of the relevant statutes, as described by the Supreme Court in *Jennings*, supports the Court's reading.

### c.  The Relevant History

The history of § 1226(a) further supports the Court's reading. Like other courts within the Sixth Circuit, *Pizarro Reyes*, 2025 WL 2609425, at *7; *Contreras-Lomeli*, 2025 WL 2976739, at *7, this Court finds persuasive the historical analysis contained in *Rodriguez*, 779 F. Supp. 3d 1239:

> Before [the Illegal Immigration Reform and Immigration Responsibility Act of 1994 ("IIRIRA")] passed, the predecessor statute to Section 1226(a) governed deportation proceedings for all noncitizens arrested within the United States. [] This predecessor statute, like Section 1226(a), included discretionary release on bond. [] Upon passing IIRIRA, Congress declared that the new Section 1226(a) "restates the current provisions in [the predecessor statute] regarding the authority of the Attorney General to arrest, detain, and release on bond a[] [noncitizen] who is not lawfully in the United States." []

*Id.* at 1260 (internal citations omitted). Immigrants unlawfully in the United States were within the scope of § 1226(a)'s predecessor, and Congress declared § 1226(a) to have the same scope as its predecessor. It thus stands to reason that immigrants unlawfully in the United States fall within § 1226(a).

Section 1226(a)'s recent history via the Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025), further supports this reading. The Laken Riley Act added § 1226(c)(1)(E), which, in relevant part, mandates detention of immigrants who are (1) in the United States without admission or parole and (2) have been arrested, charged with, or convicted of certain crimes. 8 U.S.C. § 1226(c)(1)(E). If, as the government argues, § 1226(a) only applied to admitted immigrants, Congress would not have had to carve out certain unadmitted immigrants using the Laken Riley Act. Further, if, as the government argues, § 1225(b)(2) mandates detention of all unadmitted immigrants, then it would be pointless for Congress to mandate the detention of a subset of those unadmitted immigrants using the Laken Riley Act. This Court "will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2)." *Lopez-Campos*, 797 F. Supp. 3d at 784 (citation omitted); *Barrera*, 2025 WL 2690565, at *4 (citation omitted).

### d. Relevant Case Law

In the end, the Court finds the government's interpretation unpersuasive.[9] And the Court is not alone. The vast majority of courts to consider it have rejected the government's interpretation.[10] Indeed, almost every district court within the Sixth Circuit to consider it has rejected the government's interpretation.[11] These courts found, as the Court finds here, that

---

[9] The government also argues that "[p]ast practice does not override clear statutory language." (Doc. No. 6, at 24.) The Court does not rely on past practice in interpreting the relevant statutes. Accordingly, the Court does not address this argument

[10] *See, e.g., Manzano v. Noem*, No. 2:26-cv-133, 2026 WL 371412 (D.N.M. Feb. 10, 2026); *Chang v. Noem*, No. 4:26-cv-3019, 2026 WL 357553 (D. Neb. Feb. 9, 2026); *Lal v. Noem*, No. C26-247, 2026 WL 369378 (W.D. Wash. Feb. 10, 2026); *Jose-de-Jose v. Noem*, No. 25-cv-1454, 2026 WL 360045 (W.D. Okla. Feb. 9, 2026); *Gomes v. Hyde*, 804 F. Supp. 3d 265 (D. Mass. 2025); *Rodriguez*, 779 F. Supp. 3d 1239; *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025); *Maldonado v. Olson*, 795 F. Supp. 3d 1134 (D. Minn. 2025); *Sumba*, 2025 WL 3126512.

[11] *See, e.g., Barrera*, 2025 WL 2690565, at *5 (collecting cases); *Pizarro Reyes*, 2025 WL 2609425; *Lopez-Campos*, 797 F. Supp. 3d 771; *Martinez-Elvir*, 2025 WL 3006772; *Contreras-Lomeli*, 2025 WL 2976739; *Orellana v. Noem*, No. 4:25-cv-112, 2025 WL 3006763 (W.D. Ky. Oct. 27, 2025); *Hernandez Capote v. Noem*, No. 25-cv-13128, 2025 WL 3089756 (E.D. Mich. Nov. 5, 2025); *Jimenez Garcia v. Raybon*, No. 2:25-cv-13086, 2025 WL 2976950 (E.D. Mich. Oct. 21, 2025); *Rodriguez v. Noem*, No. 1:25-cv-1196, 2025 WL 3022212 (W.D. Mich. Oct. 29, 2025); *Puerto-*

immigrants like Lemus who have spent years in the United States before being detained are subject to 8 U.S.C. § 1226(a)'s discretionary bond provision—not 8 U.S.C. § 1225(b)'s mandatory detention provision.

In support of its argument, the government cites a handful of non-binding decisions in which courts adopted the government's interpretation, chief among them being a recent decision from the Fifth Circuit Court of Appeals. (Doc. No. 7 (Notice of Supplemental Authority) (attaching *Buenrostro-Mendez*, 2026 WL 323330).) Respectfully, this Court disagrees with the Fifth Circuit and other courts adopting the government's interpretation for the reasons discussed above, namely: (1) they fail to give effect to, and indeed render superfluous, the term "seeking admission" in § 1225(b)(2) and portions of § 1226(c); (2) they fail to read the Supreme Court's analysis in *Jennings* holistically, and thus fail to properly consider the overall statutory scheme; and (3) they fail to appropriately consider the relevant legislative history, and thus fail to see that Congress intended to maintain the discretionary bond framework. Indeed, the thorough and well-reasoned dissent in *Buenrostro-Mendez* identifies some of these same deficiencies. *See generally Buenrostro-Mendez*, 2026 WL 323330, at *10–18 (Douglas, J. dissenting).

Additionally, the Fifth Circuit is not the only Federal Court of Appeals to have addressed the government's interpretation. Indeed, shortly after this Court issued its opinion in *Chavez*, and before the Fifth Circuit ruled in *Buenrostro-Mendez*, the Seventh Circuit Court of Appeals rendered a decision in *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025). For many of the same reasons this Court identifies above, the Seventh Circuit, albeit on a preliminary record, held that the government was unlikely to succeed on its argument that §

---

*Hernandez*, 2025 WL 3012033; *Sanchez Alvarez*, 2025 WL 2942648; *Ramos v. Olson*, 26-cv-8, 2026 WL 372887 (E.D. Ky. Feb. 10, 2026).

1225(b)(2) applied to all unadmitted immigrants in the United States. *Id.* at 1060–63. The limited number of courts of appeals that have addressed this issue do not agree on the issue,[12] and the vast weight of persuasive authority from across the country weighs against the government. The government provides no binding or persuasive authority convincing this Court to depart from its reading of §§ 1225(b)(2) and 1226(a).

\* \* \*

Considering the text, structure, and history of the relevant statutes, the Court rejects the government's interpretations of 8 U.S.C. §§ 1225(b)(2) and 1226(a). Section 1225(b)(2) does not apply to all unadmitted immigrants present in the United States, and § 1226(a) is not limited to immigrants admitted into the United States. Rather, § 1226(a) applies broadly to immigrants arrested and detained pending removal determinations. Meanwhile, § 1225(b)(2) carves out from § 1226(a) those immigrants who are (1) either present in the United States without having lawfully entered after inspection and authorization by an immigration officer or arriving in the United States and (2) seeking lawful entry via inspection and authorization by an immigration officer. Lemus, who is currently detained pending a removal determination after being in the United States for eight years, and who was not seeking to lawfully enter the United States, is governed by § 1226(a) and its bond framework. The government's application of § 1225(b)(2) procedures to Lemus renders his detention "in violation of the . . . laws . . . of the United States[,]" warranting habeas relief. 28 U.S.C. § 2241(c).

3.    *Due Process*

The government's detention of Lemus without a bond hearing also violates the Constitution. The Due Process Clause of the Fifth Amendment protects every person from being

---

[12] Indeed, the Fifth Circuit Court of Appeals panel that decided *Buenrostro-Mendez* issued a split decision.

"deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) (citations omitted). To determine the process due, courts use the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Those factors are: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335 (citation omitted).

The *Mathews* analysis weighs in Lemus's favor. First, the private interest at stake is the core liberty interest of being free from detention. *See Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." (citation omitted)). Second, the risk of erroneous deprivation is significantly elevated by the fact that the government refuses to operate under the appropriate statutory framework and provide Lemus a bond hearing, and such risk could be mitigated by provision of the statutorily required bond hearing. Finally, the government provides no argument regarding its own interest in not providing Lemus with a bond hearing; indeed, the government's filings tellingly omit discussion of the *Mathews* analysis entirely.

The Court thus has no trouble concluding that the government violated Lemus's right to due process when it applied § 1225(b)(2)'s mandatory detention provision despite his detention falling under § 1226(a)'s discretionary bond provision. This conclusion accords with various other

courts within the Sixth Circuit. *See e.g., Casio-Mejia v. Raycraft*, No. 2:25-cv-13032, 2025 WL 2976737, at *9 (E.D. Mich. Oct. 21, 2025); *Garcia v. Raycraft*, No. 1:25-cv-1281, 2025 WL 3122800, at *7 (W.D. Mich. Nov. 7, 2025); *Godinez-Lopez v. Ladwig*, No. 2:25-cv-2962, 2025 WL 3047889, at *6 (W.D. Tenn. Oct. 31, 2025). This violation of the Due Process Clause warrants habeas relief under 28 U.S.C. § 2241.

## III.   CONCLUSION

For the reasons stated above, Lemus's petition (Doc. No. 1) is GRANTED, and the government's motion to dismiss (Doc. No. 6) is DENIED. The government is ordered to either release Lemus immediately or hold a hearing no more than seven days from the day of this order to determine whether to release Lemus on bond pursuant to 8 U.S.C. § 1226(a) and consistent with this Court's determination. The Court ORDERS the government to file, within fourteen days from the day of this order, a certificate of compliance certifying that the government has complied with this order and stating whether Lemus remains in custody.

**IT IS SO ORDERED**.

Dated: February 23, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**